# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**NELSON FOSTER,**
**Claimant Below, Petitioner**

**FILED**
**October 28, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-172**          (JCN: 2022004123)

**KINGSTON MINING, INC., C/O ANR,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Nelson Foster appeals the March 22, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Kingston Mining, Inc., c/o ANR ("Kingston") filed a response.[1] Mr. Foster did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which granted Mr. Foster a 0% permanent partial disability ("PPD") award for occupational pneumoconiosis ("OP").

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Foster underwent pulmonary function testing on May 25, 2021, at New River Health. The technician's comments indicated that the spirometry data was acceptable and reproducible. On June 12, 2021, Ahmed Afzal, M.D., interpreted the May 25, 2021, chest x-ray. Dr. Afzal noted that it was film quality 1 and that there were no classifiable parenchymal abnormalities and no pleural abnormalities. Dr. Afzal indicated that there was a coalescence of small opacities, bullae, and emphysema. The impression was no evidence of pneumoconiosis opacities in the lung fields.

On August 16, 2021, Daniel Doyle, M.D., at New River Health signed a Physician's Report of Occupational Pneumoconiosis. The report indicated that Mr. Foster had a dry cough, increased shortness of breath, and fatigued easily with activity. Dr. Doyle opined that Mr. Foster had contracted OP with diagnosed impairment. Mr. Foster signed the

---

[1] Mr. Foster is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. Kingston is represented by Sean Harter, Esq.

1

Report on August 22, 2021, alleging a 30-year exposure history. The claim administrator issued an order dated November 19, 2021, that accepted the claim for OP on a nonmedical basis, subject to the presumption set forth in West Virginia Code § 23-4-8c(b) (2009).

Mr. Foster was seen by Caleb Workman, M.D., on December 30, 2021. Dr. Workman noted that Mr. Nelson was a current, everyday smoker of tobacco and smoked one-half of a pack per day for forty years.

The Occupational Pneumoconiosis Board ("OP Board") issued findings dated April 14, 2022, indicating that the Board could not make a diagnosis of OP. The OP Board noted that Mr. Foster was previously examined by the Board on March 20, 2018, in claim 2017027454 with no diagnosis of OP. The Board further noted that Mr. Foster was sixty-five years old, he had a thirty-year dust exposure, and he had a fourteen-year smoking history at 0.3 packs per day. Spirometry and diffusion testing was done for the Board on that date at the Occupational Lung Center. The Board stated that the chest x-rays from that date were compared to previous Board films dated March 20, 2018, and January 23, 2018. The Board found that there were insufficient pleural or parenchymal changes to establish a diagnosis of OP. By order dated June 14, 2022, the claim administrator for self-insured Kingston granted 0% PPD for the diagnosis of OP. Mr. Foster protested this order to the Board.

On September 7, 2022, an initial hearing was held, and the testimony of the OP Board was taken. The OP Board's radiologist reviewed chest radiographs dated April 14, 2022, and he testified that the films were of good quality and showed the lungs to be clear without evidence of OP. Jack Kinder, M.D., testified that he agreed with the radiologist's interpretation. Dr. Kinder indicated that there was a spirometry study from New River Health dated May 25, 2021, which was valid and reproducible on its face. Dr. Kinder stated that, prior to adjusting for the super volume, the study demonstrated approximately 20% impairment; and after adjusting for the super volume, the study reflected 15% impairment. Dr. Kinder testified that the spirometry study performed at the time of the OP Board's examination on April 14, 2022, was valid and reproducible on its face. Dr. Kinder stated that after reducing for the super volume, the study would be 0% impairment.

However, Dr. Kinder stated that the New River Health study was the better study as it had greater volumes than the OP Board's study. Dr. Kinder noted that Mr. Foster had been diagnosed with chronic obstructive pulmonary disease in 2018 and that smoking was the cause of this disease, and that while the Board found harsh breath sounds and rales at the examination, there were no correlating findings on the x-ray. Dr. Kinder observed that the claim was subject to the presumption and stated that there was an overall impairment of 15% and he would attribute 5% to nonoccupational causes (history of smoking) and 10% to his thirty-year occupational dust exposure. However, Dr. Kinder agreed that all of the

2

impairment reflected by the New River Health study could be attributable to cigarette smoking related disease.

Mr. Foster underwent another spirometry testing on August 2, 2023. The OP Board testified at a final hearing on January 3, 2024. The OP Board radiologist testified that the films were unchanged since the initial hearing on September 7, 2022, and the chest radiographs dated April 14, 2022, showed no evidence of OP. Dr. Kinder testified that the OP Board reviewed the August 2, 2023, spirometry testing. Dr. Kinder stated that the studies were valid and reproducible on their face and demonstrated no impairment, although he found it difficult to determine which of the two spirometry studies was better – either the test from August 2023 or the one from New River Health. Dr. Kinder opined that, after reviewing all of the spirometry studies of record, Mr. Foster has an overall normal lung function, and he would not attribute anything to occupational exposure. However, Dr. Kinder admitted that in considering the two better tests together, it was arguable that Mr. Foster may have a 10% overall impairment. Yet, Dr. Kinder stated that to the extent Mr. Foster has any pulmonary impairment, he would attribute such impairment to nonoccupational factors.

Dr. Kinder remarked that he was prohibited from dividing the 10% or to recommend a 5% impairment award. Dr. Kinder also testified that some medical records indicated that Mr. Foster had a more extensive smoking history than what he reported to the Board. Thus, Dr. Kinder concluded that Mr. Foster's pulmonary function studies demonstrated no pulmonary impairment and that, to the extent that he had any impairment, it was attributable to nonoccupational factors. OP Board member Bradley Henry, M.D., concurred with Dr. Kinder and the findings of radiologist John Willis, M.D.

On March 22, 2024, the Board affirmed the claim administrator's order, which granted Mr. Foster 0% PPD for OP. The Board found that Mr. Foster had 0% impairment attributable to OP. Mr. Foster now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;

3

(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, ___ W. Va.___, 905 S.E.2d 528 (2024).

Mr. Foster argues that the preponderance of the evidence provides that he has more than a 0% whole person impairment due to OP. Mr. Foster further argues that the OP Board testified that it would recommend a 5% impairment due to OP if it could. Thus, Mr. Foster contends that it was within the Board's purview to grant a 5% PPD award in this claim and that the Board erred by failing to do so. We disagree.

In *Rhodes v. Workers' Comp. Div.*, 209 W. Va. 8, 17, 543 S.E.2d 289, 298 (2000), the Supreme Court of Appeals of West Virginia held that the party protesting the findings of the OP Board has the burden to establish that the OP Board was clearly wrong.

Contrary to Mr. Foster's arguments, the OP Board did not find 10% impairment, or 5% impairment related to OP. Further, the Board did not have the discretion to reverse the OP Board, unless it found the OP Board was clearly wrong. *See* West Virginia Code § 23-4-6a (2005), *see also Fenton Art Glass Co. v. West Virginia Office of Ins. Comm'r,* 222 W. Va. 420, 664 S.E.2d 761 (2008) (per curiam) (holding Board of Review's decision was in clear violation of its statutory standard of review when it failed to accord proper statutory deference to OP Board's conclusions.) Additionally, as argued by Kingston, although a 5% PPD award was previously available for claimants who had an x-ray diagnosis of OP without measurable pulmonary impairment, this provision contained within West Virginia Code § 23-4-6a was abolished in 2003.

Finally, Mr. Foster asserts that since the OP Board could not determine that one study was better than the other, it was required, pursuant to West Virginia Code § 23-4-1g, to choose the one more consistent with his position. Again, we disagree. Although the OP Board indicated that it was difficult to determine which test was better, the Board ultimately found that the pulmonary function studies taken at the Occupational Lung Disease Clinic on August 2, 2023, represented the most reliable study. The Board determined that Mr. Foster's lung function was normal, and it would not attribute any impairment to occupational exposure. Thus, we do not find Mr. Foster's argument to be persuasive.

As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial

evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in finding that Mr. Foster failed to establish that the OP Board was clearly wrong.

Accordingly, we affirm the Board's March 22, 2024, order.

Affirmed.

**ISSUED:** October 28, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

5